**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Staff Sergeant ROBERT A. HUDSON**
**United States Air Force**

**ACM S32167**

**9 September 2014**

Sentence adjudged 25 April 2013 by SPCM convened at Joint Base San Antonio-Lackland, Texas. Military Judge: Donald R. Eller (sitting alone).

Approved Sentence: Bad-conduct discharge, confinement for 5 months, and reduction to the grade of E-2.

Appellate Counsel for the Appellant: Captain Christopher D. James.

Appellate Counsel for the United States: Major Roberto Ramirez; and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is subject to editorial correction before final release.

TELLER, Judge:

At a special court-martial comprised of a military judge sitting alone, the appellant was convicted, pursuant to his pleas, of two specifications of violating a lawful general regulation, eight specifications of maltreatment, one specification of false official statement, one specification of adultery, and two specifications of obstruction of justice, in violation of Articles 92, 93, 107, and 134, UCMJ, 10 U.S.C. §§ 892, 893, 907, 934.[1]

---

[1] The Government withdrew and dismissed one specification each of maltreatment and assault prior to trial and, after announcement of findings on the offenses to which appellant pled guilty, dismissed eight specifications of assault.

The court sentenced him to a bad-conduct discharge, confinement for five months, and reduction to E-2. The convening authority approved the sentence as adjudged.

The appellant now raises three issues on appeal: (1) the two specifications of violating a lawful order are multiplicious; (2) the appellant's post-trial rights were violated by a delay of 103 days between trial and convening authority action; and (3) the appellant's sentence was inappropriately severe.[2] Finding no error that materially prejudices a substantial right of the appellant, we affirm.

*Background*

The appellant was a military training instructor (MTI) who engaged in a prohibited relationship with one trainee and maltreated eight other trainees by exposing them to full-strength bleach fumes in an unventilated latrine. After an investigation into the unprofessional relationship was initiated, the appellant obstructed justice by concealing evidence and advising Airman First Class (A1C) RD to lie to investigators and destroy evidence.

In July or September of 2011, the appellant initiated a sexual relationship with then-trainee (later A1C) RD while she was attending basic training at Joint Base San Antonio-Lackland. A1C RD was assigned to the "sister flight" of the flight the appellant supervised. A1C RD was directed by her primary MTI to find the appellant in order to get sunblock from the supply cabinet. While alone in the dorms, the appellant kissed A1C RD. The kiss lasted for a few seconds, after which both A1C RD and the appellant returned to their duties. Approximately two weeks later, the appellant tasked A1C RD to collect physical training profile information from the other trainees in her flight and bring it to him in another dorm room. A1C RD complied with his instructions. Once they were alone, the appellant and A1C RD engaged in sexual intercourse.

After A1C RD graduated from basic training on 22 September 2011, the appellant maintained communication with her while she was assigned to technical training at nearby Fort Sam Houston. Between then and 3 December 2011, the appellant and A1C RD communicated by cell phone, text message, and in person. On two occasions, they met at a hotel and had sexual intercourse. For this course of conduct with A1C RD, the appellant was convicted of adultery and two specifications of violating a lawful general regulation.

The maltreatment incident arose in September 2012, after the appellant was dissatisfied with the cleanliness of his flight's latrine. The appellant doused the toilets and floors of the latrine with two gallons of bleach and instructed eight trainees responsible for the latrine to clean it up. While cleaning the latrine, some of the trainees began experiencing adverse effects such as coughing, vomiting, dry heaving, and a

---

[2] The third issue is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

bleeding nose from the bleach fumes. One trainee's vomiting was so severe it caused hemorrhaging in his eyes. Despite the visible adverse effects, the appellant continued to order them back into the latrine until it was clean. For this incident, the appellant was convicted of eight specifications of maltreatment, one for each trainee exposed to the bleach fumes.[3]

In October 2012, the Air Force Office of Special Investigations (AFOSI) initiated an investigation into the unprofessional relationship between the appellant and A1C RD. After interviewing A1C RD, AFOSI agents initiated a pretext phone call between A1C RD and the appellant. During the call, A1C RD told the appellant she was about to be interviewed by AFOSI. The appellant told her to tell AFOSI that they hadn't done anything. When A1C RD asked specifically about pictures they had exchanged via text message, the appellant told her to delete them and that she should delete all of their messages on Facebook. AFOSI later got a search authorization for the appellant's cell phone. At AFOSI's request, the appellant was ordered to report to his superintendent's office. When the appellant arrived, AFOSI presented the appellant with the search authorization for his cell phone. The appellant, who had anticipated the seizure of his phone, falsely told the agents he had lost it. Instead, he had deliberately concealed the phone in order to impede the investigation. For this misconduct, the appellant was convicted of making a false official statement and two specifications of obstructing justice.

*Multiplicity*

The appellant was convicted of violating a lawful general regulation by "wrongfully conducting a personal relationship" with A1C RD while she was a trainee. He was also convicted of a second specification covering the same time frame that alleged he "wrongfully conduct[ed] a sexual relationship" with her. The appellant now contends "unconstitutional multiplicity" exists because a "consensual sexual relationship . . . is necessarily also a personal relationship," making the sexual specification a lesser included offense of "personal relationship" specification.[4] We find the appellant expressly waived this issue at trial.

---

[3]  The appellant was also charged with eight specifications of assault for this incident, but those specifications were dismissed.

[4]  Both specifications refer to the same paragraph of an Air Force Instruction prohibiting personal or intimate relationships between MTIs and trainees, including recent graduates who are still in technical training. Specifically, Air Education and Training Command Instruction 36-2909, *Professional and Unprofessional Relationships*, ¶ 4.3.3 (2 March 2007) states that faculty and staff will:

> Not establish, develop, attempt to develop, or conduct a personal, intimate, or sexual relationship with a trainee, cadet, student, or member of the immediate family of a trainee, cadet, or student. This includes, but is not limited to, dating, handholding, kissing, embracing, caressing, and engaging in sexual activities. Prohibited personal, intimate, or sexual relationships include unprofessional relationships conducted in person

As part of his pretrial agreement (PTA), the appellant in this case agreed to waive all waivable motions. Such a provision normally bars an appellant from asserting claims of multiplicity on appeal. *See United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (stating that when an appellant "intentionally waives a known right at trial, it is extinguished and may not be raised on appeal.") In *Gladue*, the Court expressly considered the difference between a waiver as part of a PTA and waiver (or, more specifically, forfeiture) as a result of an unconditional guilty plea alone. The Court held that an appellant would be entitled to appellate relief if the specifications are facially duplicative even if he failed to raise a multiplicity claim at trial. *Id.* at 314 (citing *United States v. Lloyd*, 46 M.J. 19, 23 (C.A.A.F. 1997)). The *Gladue* court then went on to cite a caveat in *Lloyd*: "Express waiver or voluntary consent, however, will foreclose even this limited form of inquiry." *Id.* (citing *Lloyd*, 46 M.J. at 23) (internal quotation marks omitted).

Here, the military judge ensured the appellant was aware how the two specifications related to each other, as he specifically told the appellant:

> [W]e have to kind of talk about these [two specifications] somewhat distinctly, because under the law, there is a general proposition the government should not usually be able to secure . . . two convictions for essentially the same behavior . . . . So as we talk about [specification one], we are talking about a personal relationship . . . that doesn't include sex. Then we will talk about the sexual nature of the relationship . . . .

The appellant acknowledged his understanding of this concept and then engaged in a guilty plea inquiry that separated his sexual conduct with A1C RD from his non-sexual contact with her.

Furthermore, the military judge conducted a colloquy with the appellant to make sure he understood the effect of the waiver provision of his PTA, including its effect on appellate review. When asked what motions the defense envisioned raising absent a waiver, the appellant's trial defense counsel cited multiplicity as it related to the maltreatment and assault charges. The military judge referenced the eight maltreatment specifications and advised the appellant:

> MJ:   One of the things [trial defense counsel] could have done is he could have said, "Hey, judge, that's not fair. You know, the

---

and/or via cards, letters, e-mails, telephone calls, instant messaging, video, photographs, or any other means of communication.

Paragraph 4.3.1.1 establishes an ongoing duty to refrain from such relationships "throughout the entire period of training or instruction received by trainees and cadets prior to reporting to their permanent duty stations of assignment."

government is just piling on at this stage and what they should do is, you should combine them all together in one so that if Sergeant Hudson is found guilty, he is really found guilty of one crime, as opposed to eight different crimes. That's just not right."

But, because you gave up that opportunity to make that motion, I don't get a chance to rule on it and so you don't get that sort of relief. Do you understand that?

APP:    Yes, sir.

MJ:    Based on everything I have talked to you about and the things that [trial defense counsel] has explained to you, do you still want to give up making motions in order to get the benefit of your Pretrial Agreement?

DC:    May I have a moment?

MJ:    Sure.

[Defense counsel and accused consulted.]

APP:    Yes, sir.

While that portion of the colloquy focused on the maltreatment and assault charges, the military judge clearly conveyed that the appellant was giving up the opportunity to contest on appeal whether the Government was "piling on" in its formulation of the charges.

In this case, the military judge's inquiry explained to the appellant how the two Article 92, UCMJ, specifications were distinct from each other and covered non-duplicative conduct by the appellant. It also established that the waiver provision of the PTA was knowing and intelligent. The appellant received the benefit of that PTA in the form of special court-martial limits on punishment. Therefore, multiplicity of the charges was a matter considered and discussed during the providence inquiry. We find no reason on the facts of this case to second-guess the appellant's PTA and grant relief on a theory explicitly waived at trial. We find the appellant expressly waived any claim of multiplicity as to these specifications and extinguished his right to raise that on appeal. *See Gladue*, 67 M.J. at 314.

*Post-trial Delay*

This Court reviews "de novo claims that an appellant has been denied the due process right to a speedy post-trial review and appeal." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citing *United States v. Cooper*, 58 M.J. 54, 58 (C.A.A.F.

2003)).   The appellant concedes that the 103 days that elapsed between trial and convening authority action is not presumptively unreasonable under *Moreno*, but argues that this Court should find it unreasonable based on the circumstances, and asks us to set aside his bad-conduct discharge.

The appellant specifically asserts that the post-trial delay was unreasonable because it denied him the possibility of entering the Return to Duty Program (RTDP). The appellant's trial concluded on 25 April 2013.  According to the appellant's brief, the RTDP stopped accepting new applicants on 31 May 2013 because the Secretary of the Air Force discontinued the program.   The appellant does not provide any evidence, however, that convening authority action was required before he could apply for the RTDP.   *See* Air Force Instruction 31-205, *The Air Force Corrections System*, ¶ 11.6.2.1 (7 April 2004) ("[E]ligible inmates regardless of length of confinement may apply to their [convening authority] for entry into the RTDP as part of their clemency request following courts-martial *and prior to [convening authority] action*.") (emphasis added).

Given this lack of evidence that the timing of the preparation of the record of trial affected the appellant's ability to apply to the program, we decline to provide him relief on appeal.   Since we find that the length of the delay in this case was neither presumptively unreasonable nor unreasonable under the circumstances, we do not proceed to the full four-factor due process analysis for unreasonable delay.   *See United States v. Toohey*, 60 M.J. 100, 102 (C.A.A.F. 2004) (stating that unless there is a facially unreasonable delay, it is unnecessary to consider four factors).   We are also mindful of our authority to grant relief under *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002), and Article 66(c), UCMJ, 10 U.S.C. § 866(c), even in the absence of prejudice.   We decline to do so here.   We see nothing about the post-trial processing of this case that renders the appellant's sentence inappropriate or provides any reason to grant relief.

*Sentence Appropriateness*

The appellant challenges the appropriateness of his sentence, asking that this Court set aside the bad-conduct discharge. This Court reviews sentence appropriateness de novo.  *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006).   We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[], on the basis of the entire record, should be approved."   Article 66(c), UCMJ.   "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial."   *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009).  Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency.  *United States v. Nerad*, 69 M.J. 138, 145–46 (C.A.A.F. 2010).

The appellant's adjudged and approved sentence is appropriate. His offenses undermined the crucial acculturation process that sets the stage for a new inductee's entire career. His disregard of his own flight's health and safety by continuing to expose eight new inductees to bleach fumes caused visible physical adverse reactions that the appellant ignored. Furthermore, the appellant admitted during the providence inquiry that other trainees in A1C RD's flight noticed the special treatment she received as a result of their unprofessional relationship. He compounded that harm by obstructing justice himself and suggesting to A1C RD that she should lie and destroy evidence to protect him. Having fully considered the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial, we find the sentence appropriate.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are

AFFIRMED.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court

7                                                                    ACM S32167